Leib M. Lerner (CA State Bar No. 227323)
Anthony L. Greene (CA State Bar No. 302044)
Alina A. Ananian (CA State Bar No. 322905)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com
Email: anthony.greene@alston.com
Email: alina.ananian@alston.com

Attorneys for Debtor XTAL Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>       XTAL Inc.,<br><br>           Debtor | Bankruptcy Case No.: 18-52770-MEH<br><br>Chapter 11<br><br>Adversary Proceeding No.: 19-05002-MEH |
| ASML, INC.,<br>          Plaintiff,<br><br>v.<br><br>XTAL INC.,<br>          Defendant. | **DEBTOR'S OPPOSITION TO MOTION FOR REMAND**<br><br>**<u>Hearing</u>**<br>**Date:  January 24, 2019**<br>**Time:  1:30 p.m.**<br>**Place:  Courtroom 3070**<br>         **280 S 1st Street**<br>         **San Jose, CA 95113** |

**DEBTOR'S OPPOSITION TO MOTION FOR REMAND**

## TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................. 1

II.   LEGAL STANDARD .......................................................... 4

III.  ARGUMENT...................................................................... 5

      A.    The *Cytodyn* Factors Weigh Against Remand........................................... 5

      B.    Neither ASML or the LLC Have Established Standing to Seek
            Relief from this Court or to Pursue Any Claim Against the Debtor. ...... 21

IV.   CONCLUSION .................................................................. 23

DEBTOR'S OPPOSITION TO MOTION FOR REMAND

i

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Bally Total Fitness Corp. v. Contra Costa Retail Ctr.*,
    384 B.R. 566 (Bankr. N.D. Cal. 2008) ................................................................16, 17

*Carrico v. City & County of San Francisco*,
    656 F.3d 1002 (9th Cir. 2011) ...............................................................................21

*Citigroup Inc. v. Pac. Inv. Mgmt. Co. (In re Enron Corp.)*,
    296 B.R. 505 (C.D. Cal. 2003) ...............................................................................17

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398, 133 S.Ct. 1138 (2013) .....................................................................21

*Classic Communs. v. Rural Tel. Serv. Co.*,
    956 F. Supp. 910 (D. Kan. 1997) ...........................................................................22

*Hopkins v. Plant Insulation Co.*,
    349 B.R. 805 (N.D. Cal. 2006) .................................................................................4

*In re Alpha Nat. Res. Inc.*,
    544 B.R. 848 (Bankr. E.D. Va. 2016) ....................................................................22

*In re C.P. Hall Co.*,
    750 F.3d 659 (7th Cir. 2014) .................................................................................22

*In re Colin*,
    44 B.R. 806 (Bankr. S.D.N.Y. 1984) ......................................................................5

*In re Cytodyn of N.M., Inc.*,
    374 B.R. 733 (Bankr. C.D. Cal. 2007).............................................................. passim

*In re Garcia*,
    584 B.R. 483 (Bankr. S.D.N.Y. 2018) ...................................................................22

*In re Hooker Inv.*,
    116 B.R. 375 (Bankr. S.D.N.Y. 1990) ...................................................................12

*In re Landmark Fence Co.*,
    No. CV 11-00934 AHM, 2011 U.S. Dist. LEXIS 150928 (C.D. Cal. Dec. 9, 2011) .....................5

*In re Motors Liquidation Co.*,
    No. 09-50026, 2012 Bankr. LEXIS 6258 (Bankr. S.D.N.Y. Aug. 6, 2012) ....................5

*In re Sayeh*,
    445 B.R. 19 (Bankr. D. Mass. 2011) ........................................................................5

*In re WorldCom, Inc. Sec. Litig.,*
    293 B.R. 308 (S.D.N.Y.2003) ....................................................................10, 14

*Indep. Living Ctr. of S. Cal., Inc. v. Shewry,*
    543 F.3d 1050 (9th Cir. 2008) ..........................................................................21

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 112 S.Ct. 2130 (1992) ...............................................................21

*Next Level Communs. L.P. v. DSC Communs. Corp.,*
    179 F.3d 244 (5th Cir. 1999) .........................................................................9, 19

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.,*
    639 F.3d 572 (2d Cir. 2011)..........................................................................10, 14

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.,*
    219 F.3d 895 (9th Cir.2000) .............................................................................21

*Schulman v. California (In re Lazar),*
    237 F.3d 967 (9th Cir. 2001) ............................................................................10

*U.S. v. Hays,*
    515 U.S. 737, 115 S.Ct. 2431 (1995) ...............................................................21

*Valley Forge Christian College v. Americans United for Separation of Church &*
    *State, Inc.,*
    454 U.S. 464, 102 S.Ct. 752 (1982) .................................................................21

*Wheeler v. Travelers Ins. Co.,*
    22 F.3d 534 (3rd Cir. 1994) ..............................................................................21

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ..........................................................................................22

*Williams v. Shell Oil,*
    169 B.R. 684 (S.D. Cal. 1994) ............................................................................4

*Wittman v. Personhuballah,*
    136 S.Ct. 1732 (2016) .................................................................................21, 22

**STATE CASES**

*Cadence Design Sys. Inc. v. Avant Corp.,*
    29 Cal. 4th 215 (2002) ......................................................................................10

*Frustuck v. City of Fairfax,*
    212 Cal. App. 2d 345 (1963) ........................................................................9, 19

*Shalimar Ass'n v. D.O.C. Enters., Ltd.,*
    142 Ariz. 36, 688 P.2d 682 (Ct.App.1984) ........................................................8

DEBTOR'S OPPOSITION TO MOTION FOR REMAND

*Tucson Estates*, 912 F.2d 1162 ...................................................................................8

**FEDERAL STATUTES**

11 U.S.C. § 157(b)(2)(N) & (O) ...............................................................................6

11 U.S.C. § 362(a) .................................................................................................12

11 U.S.C. § 362(a)(1) & (6) .....................................................................................1

11 U.S.C. § 502(c)(1) ...............................................................................................7

11 U.S.C. § 502(c)(1)-(2) .........................................................................................7

11 U.S.C. § 726(a)(4) ...............................................................................................5

28 U.S.C. § 1334 ..................................................................................................4, 11

28 U.S.C. 1452(b) ...................................................................................................4

Bankruptcy Code § 362 ..........................................................................................20

Bankruptcy Code § 363 .................................................................................2, 12, 18

Bankruptcy Code § 363(f) ....................................................................................2, 8

**STATE STATUTES**

Cal. Corp. Code § 2105(a) .....................................................................................11

Cal. Corp. Code § 2203(c) .....................................................................................11

**OTHER AUTHORITIES**

BLR 9013-1 .............................................................................................................2

iv

**DEBTOR'S OPPOSITION TO MOTION FOR REMAND**

## I.   INTRODUCTION

XTAL Inc., the debtor and debtor-in-possession in the above-captioned case and defendant in the Adversary Proceeding (the "**Debtor**" or "XTAL"), hereby opposes the Motion for Remand (the "**Motion**") [Doc. 6].[1]  The fourteen equitable factors courts consider to determine whether to remand an adversary properly removed to the bankruptcy court weigh *against* remand. In particular, five of the factors – including the movant's "super factor" – are key to the Court's determination here to deny the Motion:

> Factor 1. The effect or lack thereof on the *efficient administration* of the estate if a court recommends remand;

> Factor 6. The degree of *relatedness* or remoteness of the proceeding to the main bankruptcy case;

> Factor 7. The *substance* rather than form of an asserted "core" proceeding;

> Factor 8. The *feasibility of severing* state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

> Factor 14. The possibility of *prejudice* to other parties in the action (movant's "super factor").

When considering all of the factors as a whole, with particular attention to these five key factors, the equities strongly favor the adversary proceeding remaining in the Bankruptcy Court and with this Court denying the Motion.

---

[1] The Motion was filed by "ASML US, LLC, f/k/a ASML US, Inc." (the "LLC").  A different corporate entity, ASML US, Inc. ("ASML") pursued the debtor in the Superior Court Case through verdict on a jury trial.  On December 18, 2018, after the Petition Date and thus after the automatic stay went into effect, ASML served and filed a purported "Notice of Party Name Change" ("Notice") asserting that ASML "was converted from a Delaware corporation to a Delaware limited liability company in 2018. . . . ."  *See* **Exhibit G** to the Debtor's Opposition to Motion for Relief from Stay (Doc. 42) ("Opposition to Stay Relief").  As a matter of law, that Notice is void and violates 11 U.S.C. § 362(a)(1) & (6).  On January 9, the Court continued the hearing on LLC's Motion for Relief from Stay (Doc. 7) ("Stay Relief Motion") to be heard in conjunction with the present Motion.  For clarity and to streamline its opposition, the Debtor has not duplicated **Exhibits A through K** from the Opposition to Stay Relief, and has lettered its additional **Exhibits L through U** submitted in support of this opposition to the Motion.  Debtor respectfully requests that the Court permit Debtor to incorporate the exhibits submitted with its Stay Opposition together with this opposition.

1

Taking the key factors in reverse order, Factor 14 deals with the issue of prejudice and weighs against remand because, first and foremost, LLC fails to make a legitimate argument or support its argument with citation to admissible evidence. LLC's Motion declares that prejudice is a "super factor – it is so severe that it dominates the landscape." Motion, at p. 8. But, belying this assertion, LLC dedicated only *6 lines of its brief* to the subject and cited *no authority*. LLC merely cites to an attorney declaration which violates BLR 9013-1 and multiple rules of evidence. In fact, the record evidence shows that the Superior Court already issued a preliminary injunction and an expanded preliminary injunction requiring the Debtor to address specific data files ASML identified after comprehensive forensic imaging of the Debtor's computers and servers. The Debtor responded by promptly deleting those files, namely the xMO_branch files, and certifying compliance months ago. The primary outstanding issue *for this Court* is what to do with the latest release of Debtor's xMO_rel software because the Debtor intends to delete everything else in connection with a sale. Even though ASML alleged at trial that the latest xMO_rel software was *derived* from ASML's trade secrets, this derivation claim is not something found by the jury's special verdict and remains disputed. Regardless, ASML has, at best, a claim to an interest in the xMO_rel software, which can and should be sold free and clear in a section 363 bankruptcy sale precisely as contemplated by 363(f) of the Bankruptcy Code. Because the dispute here relates to a derivative claim, it is similar to a situation where a debtor built a building while it had access to some building information claimed as proprietary by a creditor, and then that debtor wants to sell the building in bankruptcy, but the creditor wants the building demolished. Just as that debtor's building can and should be sold in a 363 sale free and clear to the highest bidder, so should the Debtor's xMO software here. The money generated could be used to pay ASML's claim, if it chooses to file one. In sum, this "superfactor" shows that removal inflicts no prejudice on ASML, and weighs against remand.

In addition, key Factors 6, 7, and 8 focus on the closeness of the relationship between the adversary and main bankruptcy case, the substance of the claim, and the feasibility of severing them. These factors also weigh heavily against remand because this adversary and the main case are inextricably intertwined. The core issue in the bankruptcy is whether the Debtor can sell its assets in

a 363 sale free and clear of any claim or interest by a creditor, specifically ASML.[2] Both the Motion and the law recognize that even after a possible remand this Court will retain jurisdiction to decide the "status and enforceability" of any order made by the Superior Court, including any injunction. Here, even after a possibly lengthy and expensive remand process, this Court will still have to answer the core sale question regardless of what the Superior Court might decide. Thus, the issues for remand are intertwined and duplicative with the issues before this Court and not easily severable, and these factors weigh heavily against remand.

Lastly, Factor 1 weighs against remand because remand would be highly inefficient. Remand would include a bench trial or evidentiary hearing on punitive damages, which would increase estate expenses with no corresponding benefit to anyone because such damages are typically disallowed or subordinated in bankruptcy. In addition, the proposed permanent injunction is focused on the deletion of Debtor data, which requires this Court's approval and, when the Debtor's assets are sold, this Court's supervision. Furthermore, the Motion argues that remand is necessary *to reconcile inconsistencies in the Superior Court's damages verdict and also to possibly address post-trial motions*. The Motion does not propose a narrow finish to the trial, but rather a long, drawn out claim and property resolution process that will impede this Court and the Debtor's bankruptcy case. Remand will add several additional months of time and expense, and extensive litigation if the apparent inconsistencies in the verdict cannot be resolved and contemplated post-trial motions are filed and heard. Each of these aspects of remand are highly inefficient when compared to the case remaining in this Court where punitive damages can be summarily dispensed, a single court can address data deletion in specific connection with the 363 sale, and ASML's monetary claim (if any claim is ever filed) can be administered without a second trial or post-trial motions through the normal bankruptcy claim process. Efficiency under Factor 1 weighs heavily against of remand.

---

[2] Notably, neither ASML nor the LLC have filed a proof of claim in the Bankruptcy Case. Debtor listed ASML's claim as "contingent, unliquidated and disputed" on its Schedules, and at this point ASML "shall not be treated as a creditor with respect to such claim for purposes of voting and distribution." FRBP 3003(c)(2).

3

For all of these reasons, and as more fully explained below, the Court should deny the Motion for Remand.

## II. LEGAL STANDARD

"The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Courts in the Ninth Circuit have considered as many as fourteen equitable factors to decide motions for remand:

1. The effect or lack thereof on the efficient administration of the estate if a court recommends remand;

2. The extent to which state law issues predominate over bankruptcy issues;

3. The difficulty or unsettled nature of the applicable law;

4. The presence of a related proceeding commenced in state court or other non-bankruptcy court;

5. The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7. The substance rather than form of an asserted "core" proceeding;

8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9. The burden on the bankruptcy court's docket;

10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11. The existence of a right to a jury trial;

12. The presence in the proceeding of nondebtor parties;

13. Comity;

14. The possibility of prejudice to other parties in the action.

*In re Cytodyn of N.M., Inc*., 374 B.R. 733, 738 (Bankr. C.D. Cal. 2007); *see also Hopkins v. Plant Insulation Co*., 349 B.R. 805, 813 (N.D. Cal. 2006), *citing Williams v. Shell Oil,* 169 B.R. 684, 690-93 (S.D. Cal. 1994).

# III.  ARGUMENT

## A.  The *Cytodyn* Factors Weigh Against Remand.

### 1.  *Cytodyn* Factor 1 Regarding the Efficient Administration of the Estate Weighs Against Remand.

In determining the balance of equities, the Court should consider the effect of remand on the efficient administration of the estate.  Here, remand would needlessly multiply the complexity and cost of resolving the matters currently before this Court.  *First*, remanding for a bench trial or evidentiary hearing on punitive damages, as the Motion urges, would increase estate expenses with no corresponding benefit to anyone, including ASML.  *Second*, ASML's proposed permanent injunction is focused on the deletion of Debtor data, which requires this Court's approval, and can be accomplished without litigation by requiring all data not sold to the winning bidder to be deleted. Remanding will require needlessly duplicative or possibly conflicting decisions by two Courts on the same issue, and can be summarily resolved without litigation in any event.  *Third*, remanding to reconcile inconsistencies in the damages verdict and possible post-trial motions, as the Motion suggests, could take several additional months for resolution and still not provide any certainty without this Court's intervention and decision.

*First*, remanding for a bench trial or evidentiary hearing on punitive damages would needlessly increase estate expenses for no reason, because any such claim would be disallowed or subordinated as matter of black letter bankruptcy law.  The Motion ignores this glaring issue despite it having been raised at length in opposition to the stay relief motion and discussed at the January 9 hearing. The Motion cites no contrary law or argument on this point. In any event, punitive damages would be disallowed or subordinated, and where liabilities dwarf assets, as here, an evidentiary hearing or bench trial for this purpose is pure waste. *See In re Sayeh*, 445 B.R. 19, 29-30 (Bankr. D. Mass. 2011) (finding no cause to award punitive damages where the award of actual damages was sufficiently punitive in effect and the debtor had no assets to even pay for compensatory damages); *In re Motors Liquidation Co.,* No. 09-50026, 2012 Bankr. LEXIS 6258 at *35 (Bankr. S.D.N.Y. Aug. 6, 2012); *In re Colin*, 44 B.R. 806, 810 (Bankr. S.D.N.Y. 1984); *see also* 11 U.S.C. § 726(a)(4).  Remand for the purposes of proceeding in the Superior Court will not resolve the treatment of any punitive damages obtained in the state court, which would be disallowed or subordinated in the bankruptcy. *See, e.g., In re*

*Landmark Fence Co.*, No. CV 11-00934 AHM, 2011 U.S. Dist. LEXIS 150928, at *11-12 (C.D. Cal. Dec. 9, 2011) ("Priority of claims and subordination issues in this case are within the exclusive jurisdiction of the bankruptcy court and cannot be resolved in a state action."). The balance of equities does not favor granting remand for this wasteful and inefficient purpose.

*Second*, the Motion fails to present any evidence regarding what specifically should be enjoined by the Superior Court and why a state court injunction would be necessary. Because of that lack of specificity, there is no basis to assert that the Superior Court would be the most efficient forum to make any such determination because the Motion makes no showing as to what that determination might need to be. Moreover, ASML's draft proposed permanent injunction is focused on deletion of Debtor data, which would require this Court's approval. "[O]rders approving the sale of property" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship" are core proceedings subject to this Court's determination. 11 U.S.C. §157(b)(2)(N) & (O). Remanding to litigate an ambiguous and highly disputed "injunction" would require needlessly presenting the same data deletion issue twice to two different Courts, instead of once to this Court. Even if the Superior Court were to enter an injunction requiring the Debtor to delete certain data, it would still need to be re-reviewed and then approved, disapproved, modified, limited or expanded by this Court. Indeed, as the Motion explicitly admits and the law it cites holds, any remanded claims would still "preserv[e] the issues of the status and enforceability of the claim to the bankruptcy court." Motion, Page 5. As a result, the most efficient path is to deny remand and collapse the question of data deletion into a single inquiry before this Court, instead of a two-step inquiry before two Courts.[3]

*Third*, the Motion remarkably urges remand for both post-trial motions and finalization of the verdict "*after deduplicating awarded amounts, into a judgment establishing ASML's right to collect an amount certain from XTAL.*" Motion, Page 2. Thus, the argument is that an 18 page special verdict following a three week jury trial now needs to be reinterpreted. Neither ASML nor the LLC have even

---

[3] Notably, the Superior Court case has at least three separate judges concurrently ruling on various matters in that case. *See* Debtor's Opposition to Motion for Relief from Stay (Doc. 42), **Exhibit H** (Judge Kulkarni), **Exhibit I** (Judge Stoelker) and **Exhibit K** (Judge Kirwan).

filed a claim in this Bankruptcy Case, and are already backtracking on the amounts found by the jury in the special verdict. This highlights why this matter should remain here with this Court. Post-trial motions will likely take several additional months for resolution, if the Superior Court is permitted to try and discern the amount of ASML's or the LLC's claims. Indeed, if the "duplicating awarded amounts" in the verdict is fatal and cannot be resolved, it may require extensive litigation. No part of remand is efficient or cost-effective, particularly given limited and diminishing Debtor funds available and the amount already spent by the Debtor on cost of defense. This Court is designed for a stream-lined, cost-effective claims resolution process, including the ability to simply estimate these types of contingent claims on a summary basis. *See* 11 U.S.C. § 502(c)(1)-(2).

Claim estimation by this Court is precisely what Congress intended instead of wastefully returning a disputed claim back to state court, including where, as here, the claimant proposes no specific amount for its claim and asserts a right to an equitable remedy.

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c)(1).

The Motion's argument for the Superior Court to supposedly finish what was started there is much different than the situation in *Cytodyn*. There, Judge Donovan concluded that the right to a jury trial on state law claims in Los Angeles Superior Court, where the parties contractually agreed to litigate, witnesses resided, and creditors were all named parties, merited remand rather than removal to the bankruptcy court and possible transfer to the removing defendant's bankruptcy home court in Santa Fe, New Mexico. *Cytodyn*, 374 B.R. at 739-742. Contrast that to here, where the jury trial already finished, the state claims were determined in a written verdict, the party moving for remand is attempting to obtain a do-over on that verdict, and its draft proposed injunction is designed to affect not only the Debtor that is the sole defendant in the Superior Court case, but also other third parties such as Samsung Electronics Co., Ltd. that are not parties to the Superior Court case.

The Motion's reliance on *Tucson Estates* is also misplaced. In addition to that case being a stay relief rather than removal decision, it was a class action that required liquidation of "1,600-2,300 class action plaintiff claims" and determination of the "difficult and unsettled nature of state law as applied to implied restrictive covenants" affecting the plaintiffs' homeownership rights, as well as the right to a jury trial. *Tucson Estates*, 912 F.2d 1162, 1165 & 1169; *see also, id.* at 1169, fn.6 ("The Arizona Court of Appeals first established the doctrine of implied restrictive covenants in *Shalimar Ass'n v. D.O.C. Enters., Ltd.*, 142 Ariz. 36, 688 P.2d 682 (Ct.App.1984). Further application of the doctrine and development of principles for interpreting such covenants have not appeared in Arizona published opinions."). Here, the jury trial already concluded, money damages have been awarded, there is no question as to what the Debtor intends to sell and destroy, and the case has been removed to this Court which has the jurisdiction to determine claims and authorize the sale of the Debtor's property.

For all of these reasons, the efficient administration of the estate does not favor granting remand. This factor weighs against remand.

### 2. *Cytodyn* Factor 2 Regarding the Predominance of Bankruptcy Issues Weighs Against Remand.

The Court should consider to what extent Bankruptcy issues predominate. When doing so, it weighs against remand here. The issues here present mixed questions of state law and bankruptcy law, but the bankruptcy law issues predominate. The primary question before this Court is whether XTAL can sell its assets free and clear in a bankruptcy sale, and this question intersects with California principles of equity as to the scope of any potential permanent injunction. The Superior Court cannot answer the question relevant for this bankruptcy case, which is what can the Debtor sell pursuant to section 363(f). This Court's exclusive jurisdiction to determine what the Debtor can and cannot sell collapses the whole inquiry into a bankruptcy law question. As a result, this factor weighs against remand.

In *Cytodyn*, the analysis in determining remand was made on a pre-trial basis, where the jury still needed to determine whether or not the plaintiff's state law fraud claims had any support. Here, the jury has spoken and awarded a specific amount of damages on various claims brought to verdict.

As discussed above, it is now a bankruptcy question with regards to the proposed sale. The Court should deny remand.

### 3. *Cytodyn* Factor 3 Regarding the Difficulty or Unsettled Nature of the Applicable Law Weighs Against Remand.

The Court should consider the difficulty or unsettled nature of the applicable law. When doing so, it weighs against remand here. The primary issue that the Motion proposes remand will resolve is whether and to what extent a permanent injunction should issue. Even were that necessary (which Debtor maintains it is not), it is merely a question of applying basic principles of equity, an area of specific bankruptcy judge expertise. This not a case where the "nature of the applicable law" is difficult or unsettled. Indeed, the Motion does not contend that this is such a case, and it is plainly admitted in the Motion that "the state law issues are not necessarily difficult." Motion, at p. 6.

The Motion raises the possible difficulty of applying the facts of this case to the law, but that is not a consideration under Factor 3 of *Cytodyn* or any other factor cited in the Motion. Therefore, any argument about the application of the law is irrelevant. In addition, the Motion states: "XTAL has complained about the scope of the proposed permanent injunction, which presents novel and difficult issues of state law." Motion, at p. 6. However, the Motion fails to explain which issues are supposedly difficult or novel or why. As a result, the Debtor is not otherwise able to respond, and the Court should disregard this incomplete fragment of an argument.

If the Motion is obliquely referring to the settled law set forth in Debtor's Opposition to Stay Relief, at Page 9, explaining why the jury verdict awarding ASML $213 million in "Future Economic Damages" negates any ability for ASML to obtain an additional injunction as a matter of law, then both ASML and the LLC have been silent in responding on that score. This does not constitute any "novel or difficult issue" under this factor. It is settled law, both in California courts and under federal law, that a plaintiff cannot get both monetary damages and an injunction. *See Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 369 (1963) ("The plaintiff would obtain a double recovery if she could recover for the future injury and also have the cause of that future injury removed."); *Next Level Communs. L.P. v. DSC Communs. Corp.*, 179 F.3d 244, 253-54 (5th Cir. 1999) (where "[Plaintiff] has successfully recovered monetary damages for that future injury and has been 'made whole' for those

damages[, a]n injunction which prevents [Defendant] from performing any act for which [Plaintiff] has already been compensated would afford [Plaintiff] a duplicative remedy."). Nor will any additional trade secret claims accrue because California law does not recognize the continuing tort theory of recovery for trade secret misappropriation. "[A] plaintiff's claim for misappropriation of a trade secret against a defendant arises only once, when the trade secret is initially misappropriated, and each subsequent use or disclosure of the secret augments the initial claim rather than arises as a separate claim." *Cadence Design Sys. Inc. v. Avant Corp.*, 29 Cal. 4th 215, 227 (2002). The Motion makes no specific arguments about this settled and easy to apply law.

The Motion's sole case citation and page cite to this factor is *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580-581 (2d Cir. 2011). Reliance on that case is curious, at best, where the court remanded an Illinois state court case from the district court in New York "not charged with administration of a bankruptcy estate." *Id.* As explained there, "[a] matter cannot be timely adjudicated in state court if abstention and remand of the state law claims will unduly prolong the administration of the estate. Thus, in a case like the WorldCom bankruptcy, 'the close connections between the defendants in [the] action and the debtor, and the complexity of [the] litigation' may suggest that 'remanding to the state court could slow the pace of litigation dramatically' by leading to duplicative motions practice, repetitious discovery, and parallel adjudication of common issues." *Id.*, citing I*n re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y.2003). Applying this authority actually weighs against remand here.

### 4. *Cytodyn* Factor 4 Regarding the Presence of a Related Proceeding Commenced in State Court or Other Non-Bankruptcy Court Weighs Against Remand.

Following removal, there is no related proceeding in Superior Court or other non-bankruptcy court. If there were, then there might be an abstention issue overlapping with this remand issue to consider. But, there is not, and as a result abstention is entirely irrelevant. As the Motion admits, "abstention is not applicable to remand, because after removal, there is temporarily no parallel proceeding in state court as required for abstention." *Schulman v. California (In re Lazar)*, 237 F.3d 967, 981 (9th Cir. 2001). Motion, at p. 3. Thus, this factor weighs against remand.

Case: 19-05002    Doc# 9    DEBTOR'S OPPOSITION TO MOTION FOR REMAND    Page 15 of 28

The Motion notes in a footnote that this factor is not discussed in the brief because it is "not particularly relevant or [] subsumed in the discussion of other factors." Motion, at p. 4, n.2. By not evaluating this factor, the LLC should be found to have waived argument on its application, and the factor should be found to support denial of the Motion.

### 5. *Cytodyn* Factor 5 Regarding the Jurisdictional Basis, if Any, Other Than 28 U.S.C. § 1334 Weighs Against Remand.

The Court should consider the jurisdictional basis, if any, other than 28 U.S.C. § 1334. When doing so, it weighs against remand. The Superior Court is relevant at this point only because the Debtor and ASML litigated there prior to the Debtor's bankruptcy filing and before it became evident that ASML was not authorized to pursue its claims in California state court.

Both the Debtor and ASML are Delaware corporations. ASML filed a Certificate of Surrender with the Secretary of State of California more than a year ago, on January 3, 2018. Opposition to Stay Relief, **Exhibit D**. The Certificate of Surrender states that "[t]he corporation hereby surrenders its rights and authority to transact intrastate business in the State of California." *Id.* By operation of law, ASML lost its ability to transact intrastate business, which includes the ability to pursue lawsuits as a plaintiff in California. *See* Cal. Corp. Code § 2105(a) ("A foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification."); Cal. Corp. Code § 2203(c) ("A foreign corporation . . . which transacts intrastate business without complying with Section 2105 shall not maintain any action or proceeding upon any intrastate business so transacted in any court of this state, commenced prior to compliance with Section 2105, until it has complied with the provisions thereof . . . and has filed with the clerk of the court in which the action is pending receipts showing the payment of the fees and penalty and all franchise taxes and any other taxes on business or property in this state that should have been paid for the period during which it transacted intrastate business."). Accordingly, as of January 3, 2018, ASML lost its legal right to bring its claims in the Superior Court.

The Debtor raised this issue at length in its Opposition to Stay Relief. Neither the LLC nor ASML have ever responded in this Court with law or fact to contend that ASML could asserts its claims in the Superior Court, or that the LLC stands in ASML's shoes to do so. ASML's attempt to

11

insert the LLC in its place in the Superior Court Case is a violation of the automatic stay under 11 U.S.C. § 362(a). *See In re Hooker Inv.*, 116 B.R. 375, 380 (Bankr. S.D.N.Y. 1990) (finding that the motion to substitute plaintiff and actions to substitute plaintiff in state court proceedings were violations of the automatic stay). There is no motion for stay relief for the attempted substitution. There is no explanation as to why ASML (or the LLC) waited almost a year to inform the Superior Court, nor does its counsel that filed the Notice in violation of the stay support his personal legal conclusion that the two entities are "deemed to be the same." At this point, the only court that has appropriate jurisdiction is the Bankruptcy Court, simply because ASML cannot pursue its claims in the Superior Court, and the LLC neither asked for nor obtained stay relief to substitute into the case. This foundational issue should not be sidestepped by remand. This factor weighs against remand.

6. *Cytodyn* **Factor 6 Regarding the Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case Weighs Against Remand.**

The Court should consider the degree of relatedness or remoteness of the proceeding to the main bankruptcy case. When doing so, it weighs heavily against remand here. As indicated above, the primary question before this Court is whether the Debtor can sell its assets free and clear in a bankruptcy sale. This adversary proceeding bears directly on this central question because in it ASML seeks an injunction which could thwart or stymie the Debtor's statutory right to sell its assets free and clear under section 363. If there were a remand, this Court would still retain jurisdiction over "the status and enforceability" of any injunction and whether it should ultimately affect the sale of any of the Debtor's assets. Thus, this Court's exclusive enforcement jurisdiction collapses the entire inquiry into a single bankruptcy question. Given this extremely close relationship between the adversary and the main bankruptcy case, this factor weighs heavily against remand.

The Debtor maintains that the removed action is now "core" because the central issue remaining for determination is the transferability of property of the estate. The Debtor intends to destroy any and all data that is not for sale. It intends to sell its patents and the xMO_rel source code. Its ability to sell the xMO_rel source code free and clear of any claim by ASML is the overarching bankruptcy issue that permeates the adversary, and concerns "the administration of the estate," 157(b)(2)(A), "allowance or disallowance of claims against the estate . . .and estimation of claims or

interests," 157(b)(2)(B), "orders approving the sale of property," 157(b)(2)(N), and "other proceedings affecting the liquidation of the assets of the estate" 157(b)(2)(O). In any event, even if contrary to Debtor's position the Court determines that the adversary is not technically "core" under section 157(b)(2), the degree of relatedness here is undeniable, and because this adversary is so closely related to the main bankruptcy case, this factor weighs heavily against remand.

### 7. *Cytodyn* Factor 7 Regarding The Substance Rather Than Form of An Asserted "Core" Proceeding Weighs Heavily Against Remand.

The Court should consider the substance rather than form of an asserted "core" proceeding. When doing so, it weighs against remand here. If the Court were to only consider the form of the adversary, it might improperly conclude that it is merely a state court action involving state court issues, which is why it is important to look to the substance. When considering the substance of the adversary, all of the issues the Debtor raised under *Cytodyn* Factor 6 become even clearer. The Motion is overly focused on the form of the proceeding under state law. But, the substance of the dispute is whether the Debtor can sell its assets free and clear in a bankruptcy sale in the main bankruptcy case, and whether ASML or the LLC will be allowed to use this adversary proceeding to impair those assets by way of some type of permanent injunction. Viewed through this lens, this factor weighs heavily against remand.

As with Factor 4, the Motion does not discuss this factor based on the ambiguous assertion noted in a footnote that it is "not particularly relevant or [] subsumed in the discussion of other factors." Motion, at p. 4, n.2. By not evaluating this factor, the LLC should be found to have waived argument on its application, and the factor should be found to support denial of the Motion.

### 8. *Cytodyn* Factor 8 Regarding the Feasibility of Severing State Law Claims from Core Bankruptcy Matters to Allow Judgments to be Entered in State Court with Enforcement Left to the Bankruptcy Court.

The Court should consider the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court. When doing so, it weighs against remand here. First, as explained above, this Court's exclusive jurisdiction over the sale, as well as enforcement of any injunction, collapses the entire inquiry into a bankruptcy question as to whether the Debtor can sell certain property while deleting other property.

This cannot be easily severed and delegated backed to the Superior Court because the Court will ultimately have to decide it. It is also not easy to sever out the punitive damages and post-trial motion issues, which should also not be sent back to Superior Court given the enormous inefficiencies of that process. Therefore, this factor weighs against remand.

The Motion's sole reliance on *Tucson Estates*, a stay relief case, underscores the LLC's misapprehension of the relevant analysis. The jury has already issued its verdict. The LLC or ASML (or both) can simply file a proof of claim for a liquidated amount, including a future damages amount sufficient to remedy any and all future harm. Since the case has been removed, this Court could enter any judgment if necessary to liquidate the claim. The amount of the claim can and will be determined in the normal claims resolution process, and does not require any specialized state court decision-making. This factor weighs strongly against remand.

9. ***Cytodyn* Factor 9 Regarding the Burden on the Bankruptcy Court's Docket Weighs Against Remand.**

The Court should consider the burden on the bankruptcy court's docket. When doing so, it weighs against remand here. The burden of retaining the adversary is not significant because the Bankruptcy Court needs to supervise the sale, and would retain jurisdiction over "the status and enforceability" of any permanent injunction anyway. Therefore, the Bankruptcy Court will have to rule on these questions even if it remands. The most efficient thing is to decide them here without remand in the context of the Debtor's forthcoming asset sale.

The situation here is most like that of *WorldCom*, 293 B.R. 308, which the Motion studiously ignores while citing to the page in Parmalat that discusses *Worldcom* at length. *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580-581 (2d Cir. 2011), citing *WorldCom,* 293 B.R. at 331 ("A matter cannot be timely adjudicated in state court if abstention and remand of the state law claims will unduly prolong the administration of the estate. Thus, in a case like the WorldCom bankruptcy, 'the close connections between the defendants in [the] action and the debtor, and the complexity of [the] litigation' may suggest that 'remanding to the state court could slow the pace of litigation dramatically' by leading to duplicative motions practice, repetitive discovery, and parallel adjudication of common issues.").

As with Factors 4 and 7, the Motion does not discuss this factor based on the ambiguous assertion noted in a footnote that it is "not particularly relevant or [] subsumed in the discussion of other factors." Motion, at p. 4, n.2. By not evaluating this factor, the LLC should be found to have waived argument on its application, and the factor should be found to support denial of the Motion.

### 10. *Cytodyn* Factor 10 Regarding the Likelihood that the Commencement of the Proceeding in Bankruptcy Court Involves Forum Shopping by One of the Parties Weighs Against Remand.

The Court should consider the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. When doing so, it weighs against remand. Simply put, if it is "forum shopping" for a Debtor with about $3 million in assets to seek protection in this Bankruptcy Court following an $845 million verdict before it folds under the weight of such a verdict, then *every* bankruptcy case is forum shopping and the term "forum shopping" has lost all meaning. Both *Cytodyn* and *Tucson Estates* involved pre-trial claims not yet determined by the jury. Obviously, that is not relevant here where the jury has spoken and a verdict issued.

An angry creditor or unfinished litigation is not something new in the bankruptcy process. The Debtor is presenting a bona fide bankruptcy plan of action here including a 363 sale of its assets. As repeatedly explained above, the best way for it to happen is for this Court to move forward with this adversary remaining under its jurisdiction. Accordingly, there is no forum shopping. The fact Debtor is seeking a bona fide bankruptcy solution weighs against remand under this factor.

### 11. *Cytodyn* Factor 11 Regarding the Existence of a Right to a Jury Trial Weighs Against Remand.

The Court should consider the existence of a right to a jury trial. When doing so, it weighs against remand. Unlike the cases cited in the Motion, the jury trial is over. There is nothing left for a jury to decide and therefore this factor weighs against remand.

Indeed, the Motion admits "the case has already been tried before a jury, which rendered a verdict." Motion, at p. 8. This is undisputed. But, what is notable is that the Motion goes further and says "this factor remains as a concern because post-trial motions have not been made or decided." *Id.* This is remarkable. In making this statement, the Motion suggests that the verdict is flawed. If so, this factor sends the analysis right back to the first factor of efficiency. The Debtor should not be subjected

to escalating expenses without bankruptcy protection. This Court has the power to put a stop to the potentially endless cycle of litigation and attorney's fees, and it should exercise that power here by denying the Motion.

### 12. *Cytodyn* Factor 12 Regarding the Presence in the Proceeding of Nondebtor Parties Weighs Against Remand.

The Court should consider the presence in the proceeding of nondebtor parties. When doing so, it weighs against remand here. The adversary is between the Debtor and ASML. With no other non-debtor parties, there is not some enormous counterweight of parties pulling this case back to state court. Indeed, *Cytodyn* had four other non-debtor parties. *Tucson Estates* was a class action. As a result, this factor weighs against remand here.

As with Factors 4, 7 and 9, the Motion does not discuss this factor based on the ambiguous assertion noted in a footnote that it is "not particularly relevant or [] subsumed in the discussion of other factors." Motion, at p. 4, n.2. By not evaluating this factor, the LLC should be found to have waived argument on its application, and the factor should be found to support denial of the Motion.

### 13. *Cytodyn* Factor 13 Regarding Comity Weighs Against Remand.

The Court should consider comity. When doing so, it weighs against remand. While ultimately, both Courts have some interest in resolving this matter, the Bankruptcy Court has a stronger interest given its charge in protecting debtors from harassing creditors and maximizing the value of the Debtor's estate. A state court has an interest in resolving disputes between its residents and citizens. But those interests are not so strong to tip the balance of comity to the side of ASML or the LLC. They are both Delaware entities, and ASML, the actual plaintiff, surrendered its right to do business in California over a year ago.

The Motion quotes case law that "General principles of comity support permitting issues of state law to be determined by the state court *absent other factors dictating otherwise*." *Bally Total Fitness Corp. v. Contra Costa Retail Ctr.*, 384 B.R. 566, 573 (Bankr. N.D. Cal. 2008) (emphasis added); Motion, at p. 7. The rule here is important because, as discussed at length above, there are numerous "factors dictating otherwise" as specifically discussed above with respect to *Cytodyn* Factors 1 through 12. Indeed, *Bally* instructs that only "if the other factors discussed in this section

created an equal equitable balance between retention and remand, principles of comity dictate remand." *Bally*, 384 B.R. at 573.

Bally was a post-plan confirmation landlord/tenant dispute, where the court remanded so that the landlord could pursue its unlawful detainer case to jury trial. *Id*. at 569. This is hardly comparable to an intellectual property case brought by a Delaware corporation that surrendered its right to do business in California and already brought its case to jury verdict. In addition, the Motion's citation to *Citigroup Inc. v. Pac. Inv. Mgmt. Co. (In re Enron Corp.)*, 296 B.R. 505 (C.D. Cal. 2003) is illuminating, where the debtors were not even parties to the remanded action. *See id.* at 509 ("These proceedings, which do not involve Enron, Enron-related entities, or any of their respective officers or directors, are only remotely related to the bankruptcy proceedings.). There is certainly no conceivable way that the Motion meets any "equal equitable balance" test given the numerous factors present and weighing against remand.

### 14. *Cytodyn* Factor 14 Regarding the Possibility of Prejudice to Other Parties in the Action Weighs Against Remand.

The Court should consider the possibility of prejudice to other parties in the action. When doing so, it weighs against remand here. The prejudice that the Motion alleges is suffered by having this case removed to this Court is vastly overblown given the existence of prior preliminary injunctions, prior certificates of compliance by the Debtor, and this Court's ability to enforce orders as appropriate. Even so, the Motion makes virtually no showing on this factor, dedicating just *6 lines of its brief* on the subject, citing *no authority*, and deferring on the point almost entirely to an objectionable attorney declaration. Accordingly, this factor weighs against remand and the Court should deny the motion.

The Superior Court ordered forensic imaging of all the Debtor's computers. *See* Lerner Declaration, **Exhibit L**, at p. 2, lines 6-28. [9/7/18 PI Order]. This was completed. **Exhibit M**, at p. 49, lines 11-19 [Day 1 Transcript], **Exhibit N**, at p. 15 lines 13-19 [Day 2 Transcript]. ASML reviewed all of those images and identified specific files allegedly containing ASML's trade secrets. **Exhibit N**, at p. 9 lines 15-24. ASML asked the Court for an expanded preliminary injunction requiring the Debtor preventing transfer of this data, limiting its request to Debtor's files containing what ASML contended

17

was ASML's actual trade secrets, and excluded from the request any files which were only allegedly *derived* from ASML's trade secrets. **Exhibit M**, at p. 32, lines 17-24, p. 33, lines 1-7 [Day 1 Transcript] ("MR. RYAN: So I'm *not* including what we think was derived in their code itself, but literally our code.") As a result, the xMO_branch file was specifically identified in connection with the expanded preliminary injunction and the xMO_rel file repository was not identified. **Exhibit N**, at p. 9 lines 15-24 [Day 2 Transcript]. The Debtor certified compliance the next day by again declaring that the Debtor had searched and deleted every instance of the xMO_branch file on its computers. Li Declaration, ¶ 3; **Exhibit U** [10/23/18 Jingwei Li Declaration]; **Exhibit M**, at p. 34, lines 5-19 [Day 1 Transcript]; **Exhibit O**, at p. 2 lines 1-7 [10/30/18 Certification of Compliance]; **Exhibit P**, at pp. 1-2 [10/30/18 Jingwei Li Declaration]. On this record, with an existing preliminary injunction and compliance, any claims of prejudice are exaggerated, at best.

The Debtor is actively marketing the patents listed in Debtor's Schedules filed January 7, 2019 (Doc. 36, at Pages 12-13), and the xMO_rel source code. In connection with any sale, the Debtor will seek to delete any and all prior versions of its software that has not already been deleted. Li Declaration, ¶ 7. The Debtor will also delete or remove from its servers any data that belongs to third parties, such as the SALT and Picasso software deliverables. *Id*.; **Exhibit Q**, at p. 1377, lines 9-22, p. 1381, lines 9-25 [Day 9 Transcript]. SALT and Picasso are customer deliverables, which are owned by the customers. **Exhibit S**, at pp. 2307-2308 [Day 13 Transcript]. At the conclusion of the sale, the Debtor's intent is that there will be no data on any of the Debtor's servers or other computers or equipment that has been in any way alleged to be derivative of any ASML US, Inc. source code or other trade secrets. Li Declaration, ¶ 7. The Debtor believes that market participants are interested in purchasing the patents and xMO_rel source code, provided that these assets can be bought in a section 363 sale free and clear of any third party claims or interests. *Id*., ¶ 8. The Debtor also believes that its existing infrastructure and human capital have value for investors that wish to acquire the company for software development projects separate and apart from the assets proposed for sale. *Id*., ¶ 9 The Debtor's core group of engineers hold numerous doctorate and master degrees in physics, math and other sciences, and more than 100 years of computing experience. *Id*.; **Exhibit T**.

18

1    Further, while ASML has claimed that xMO_rel is somehow derivative of ASML trade secrets
2    (a fact not found by the jury and disputed by the Debtor), the Motion presented no documentary
3    evidence or trial testimony showing that any portion of ASML trade secrets are contained in the release
4    version of the xMO software.  **Exhibit M**, at p. 32, lines 17-24, p. 33, lines 1-7 [Day 1 Transcript]
5    ("MR. RYAN: So I'm not including what we think was derived in their code itself, but literally our
6    code."); **Exhibit N**, at p. 9, line 16 [Day 2 Transcript] ("THE COURT: …basically the xmo_branch.");
7    **Exhibit R**, at p. 1439-1440 [Day 10 transcript] (ASML expert Ernesto Staroswiecki testifying "the
8    misspelling of 'vertex'… appears first in xmo_branch … It doesn't appear in xmo_rel.").  Therefore,
9    there is nothing on this record showing that ASML would be prejudiced if the Debtor were allowed to
10   sell the latest release version of xMO_rel in a 363 sale and delete all of its other data as is being
11   proposed. An injunction is not needed and should not be used to prejudice the Debtor's attempted 363
12   sale.

13       If the xMO_rel software is anywhere near as valuable as movant suggested at the last hearing,
14   then a bankruptcy sale should easily fetch bids sufficient to cover an ASML claim if it were to make
15   one, thereby making ASML whole including on its future damages claims. *See Frustuck v. City of*
16   *Fairfax*, 212 Cal. App. 2d 345, 369 (1963) ("The plaintiff would obtain a double recovery if she could
17   recover for the future injury and also have the cause of that future injury removed."); *Next Level*
18   *Communs. L.P. v. DSC Communs. Corp.*, 179 F.3d 244, 253-54 (5th Cir. 1999) (where "[Plaintiff] has
19   successfully recovered monetary damages for that future injury and has been 'made whole' for those
20   damages[, a]n injunction which prevents [Defendant] from performing any act for which [Plaintiff]
21   has already been compensated would afford [Plaintiff] a duplicative remedy.").  If the sale does not
22   attract such a price, then this technology was not worth as much as ASML has blustered. The
23   bankruptcy sale itself will address movant's claims of prejudice. At the last hearing, movant suggested
24   there might be additional elements of damage not reflected in the jury verdict, but there is no showing
25   at all about this in the Motion.

26       The moving papers on both the Motion and Stay Relief Motion made noise about discovery
27   violations by the Debtor during the prosecution of ASML's long saga in the Superior Court. However,
28   most notably, ASML's motion for sanctions on its various complaints was ultimately denied before

trial, with the Court explaining" "I didn't see conduct that justified the sweeping issue sanctions that were sent to me as ASML's kind of final best offer on the sanctions that it wanted. I certainly don't think it justifies incriminating sanctions." **Exhibit N**, at p. 16, lines 13-17, and *more generally* pp. 13-16. [Day 2 Transcript].

The Motion has packed all of its would-be arguments into an improper attorney declaration from its state court attorney Patrick Ryan. The Ryan Declaration is objectionable for a dizzying number of reasons, and the Court should reject it accordingly. It should also reject Mr. Ryan's 66-slide "demonstrative" exhibit, which is a composite of various items not properly before this Court on this Motion. The Ryan Declaration is an improper attempt to present a variety of objectionable evidence or numerous arguments not presented in the Motion itself. The declaration and the purported "demonstrative" include vast swaths of irrelevant and inadmissible statements, allegations and conjecture that should not be considered by this Court in determining the Motion. Debtor is concurrently filing its Evidentiary Objections to the Declaration of Patrick Ryan, and respectfully requests that the Court sustain its objections.

Pointedly, the Motion makes no legitimate showing on its so-called "super factor." The best that the LLC can muster in its brief is this single unsupported statement: "It is manifestly prejudicial to ASML to require it to readdress and relitigate issues, and to adduce evidence and testimony, that have already been presented in detail to the state court." Motion, at p. 8. This is specious for a number of reasons. First, the Motion does not identify a single specific issue that this Court would need to "readdress and relitigate." Second, even on a remand, ASML would need to "adduce evidence and testimony" in support of its arguments for permanent injunction, as well as its evidentiary hearing on punitive damages and with post-trial motions. That is no different with the case proceeding as an adversary removed to this Court. Third, the Motion does not address the fact that a permanent injunction is unnecessary if the sale moves forward as proposed by the Debtor. There is simply no identified prejudice caused by the removal set forth in any of the Motion's mere *6 lines of briefing* on this "super factor." As a result, this factor weighs against remand, and for all of the reasons above, the Court should deny the motion.

### B. Neither ASML or the LLC Have Established Standing to Seek Relief from this Court or to Pursue Any Claim Against the Debtor.

The LLC has never established standing to bring its Motion. The Debtor previously opposed the LLC's motion for stay relief based on its lack standing, and remarkably the LLC has absolutely ignored the issue. This adversary is a removed action between ASML and the Debtor. There is no evidence that the LLC is a proper party or has standing to assert the interests of ASML, and neither ASML nor the LLC ever sought stay relief to substitute the LLC in place of ASML in the Superior Court Case.

Standing in federal court is governed by federal law, even in actions removed from state court. *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3rd Cir. 1994). It is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct. 1138, 1146 (2013). It is not subject to waiver and must be considered by federal courts even if the parties fail to raise it. *U.S. v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 2435 (1995). Indeed, the Court may raise standing as an issue *sua sponte* at any time. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011).

"Constitutional [or 'Article III'] standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to make out a concrete 'case' or 'controversy' to which the federal judicial power may extend under Article III, § 2." *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir.2000); *see also Lujan v. Defenders of Wildlife, supra*, 504 U.S. at 559-60. These limits are jurisdictional: they cannot be waived by any party, and there is no question that a court can, and indeed must, resolve any doubts about this constitutional issue *sua sponte*. *See, e.g., Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1064-65 (9th Cir. 2008).

It is the proponent's burden to establish standing at each stage of the litigation. *See, e.g., Lujan, supra*, 504 U.S. at 561 (the "party invoking federal jurisdiction bears the burden of establishing" that he has suffered an injury by submitting "affidavit[s] or other evidence."). Standing is not established by a conclusory allegation. *See, e.g., Carrico, supra*, 656 F.3d at 1006-1007. The Article III requirements are rigorous, and those who do not have Article III standing may not litigate in federal

court. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475-476, 102 S.Ct. 752, 760-761 (1982). The requirement to satisfy standing "persists throughout the life of the lawsuit." *Wittman v. Personhuballah*, 136 S.Ct. 1732, 1736-1737 (2016) ("we have examined the briefs, looking for any evidence that an alternative to the Enacted Plan (including the Remedial Plan) will reduce the relevant intervenors' chances of reelection, and have found none. . . We need go no further. Given the lack of evidence that any of the three Representatives has standing, we need not decide when, or whether, evidence of the kind of injury they allege would prove sufficient for purposes of Article III's requirements.").

Likewise, a party seeking to lift the stay must establish standing through proper evidence. *In re Garcia*, 584 B.R. 483, 486 (Bankr. S.D.N.Y. 2018) ("[T]he Motion to lift the automatic stay is also defective in failing to provide evidence that [movant] has standing to foreclose."). Here, much like in *Garcia*, "[n]o affidavit or declaration, or any document [was] submitted in support of the Motion" to establish that the LLC holds the rights that ASML asserted against XTAL in the Superior Court Case. *Id.* at 487; *see also, Personhuballah, supra*, 136 S.Ct. at 1737.

"A litigant must clearly and specifically set forth facts sufficient to satisfy these Article III standing requirements." *In re Alpha Nat. Res. Inc.*, 544 B.R. 848, 854 (Bankr. E.D. Va. 2016) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The LLC has failed to make the requisite showing. Even if the LLC could be indirectly affected through some corporate relationship with ASML, remote pecuniary interests that are not direct will not suffice. *Id.* at 856; *see In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014) (declaring an excess insurer's pecuniary interest in the settlement between a primary insurer and the debtor as "too remote"); *Classic Communs. v. Rural Tel. Serv. Co.*, 956 F. Supp. 910, 916 (D. Kan. 1997) ("[I]njury arising solely out of harm done to a subsidiary corporation is generally insufficient to confer standing or status as real party in interest on a parent corporation."). Because the LLC has never established Article III standing, the Motion should be denied.

## IV.    CONCLUSION

For the reasons set forth above, the Debtor respectfully requests entry of an order denying the Motion and for such other and further relief as the Court deems just.

DATED:  January 21, 2019                    LEIB M. LERNER
                                            **ALSTON & BIRD LLP**


                                            /s/  Leib M. Lerner
                                            Leib M. Lerner
                                            Attorneys for Debtor XTAL Inc.